UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LISA WALKER,

    Plaintiff,

v.                                              Case No. 8:15-cv-2668-T-24 AAS

FLORIDA DEPARTMENT OF
JUVENILE JUSTICE,

    Defendant.
_____/

**ORDER**

This cause comes before the Court on Defendant's Motion for Summary Judgment. (Doc. No. 23). Plaintiff filed a response, partly in opposition and partly to drop some of her claims. (Doc. No. 45). As explained below, Defendant's motion is granted in part and denied in part.

**I. Standard of Review**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. See Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006)(citation omitted). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. See id. (citation omitted). When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate

specific facts showing there is a genuine issue for trial. See id. (citation omitted).

## II. Background

Plaintiff Lisa Walker, a white female, began working for Defendant Florida Department of Juvenile Justice as a juvenile detention officer in January of 2013.[1]  Plaintiff contends that she was subjected to a racially hostile work environment by various co-workers and supervisors throughout her employment.  (Doc. No. 46).  Plaintiff continuously reported the harassment, but the harassment continued.  (Doc. No. 46).

In December of 2014, Plaintiff asked Major Crespo to change her shift so she would not have to work with Sergeant Lewis (one of the alleged harassers).  Major Crespo responded that if Plaintiff made another request or complaint about race discrimination, the Regional Office had instructed him that Plaintiff would be terminated.  (Doc. No. 46, ¶ 59).  Plaintiff also spoke to Captain Nelson, who also said that if Plaintiff made any more complaints, the Regional Office would terminate her.  (Doc. No. 46, ¶ 59).

On December 9, 2014, Plaintiff spoke to Frank Gargett in the Regional Office and asked to change her shift and supervisor (Sergeant Lewis was technically her supervisor).  (Doc. No. 46, ¶ 60).  Captain Nelson told Plaintiff that it was a mistake to contact Gargett.  (Doc. No. 46, ¶ 60).

Nothing was done to stop the harassment, and Plaintiff decided to resign.  Plaintiff turned in her letter of resignation on December 19, 2014, with an effective date of January 15, 2015. (Doc. No. 46, ¶ 64).

---

[1]The organizational structure at Plaintiff's facility from top to bottom is as follows: Major (Superintendent), Captain, Lieutenant, Sergeant, Juvenile Detention Officer II, Juvenile Detention Officer I.

Prior to Plaintiff turning in her resignation letter, Sergeant Lewis made a comment that she (Lewis) "was resigning and was going to 'get a boob job and work at Hooters.'" (Doc. No. 46, ¶ 65). Plaintiff thought Sergeant Lewis was joking, because she (Lewis) had made the same comment previously. (Doc. No. 46, ¶ 65). Once Plaintiff realized that Sergeant Lewis was really resigning, Plaintiff asked Major Crespo on December 23rd, 24th, and 30th if she could rescind her resignation. (Doc. No. 46, ¶ 66; Doc. No. 46-12).

Plaintiff also spoke to Sergeant Rios about her desire to rescind her resignation. (Doc. No. 34-1, depo p. 143). Sergeant Rios spoke to Captain Nelson about whether Defendant was going to allow Plaintiff to rescind her resignation. Captain Nelson did not have the authority to rescind Plaintiff's resignation, but Sergeant Rios believed that Nelson's input would weigh heavily in the decision. (Doc. No. 34-1, depo p. 146). Captain Nelson responded to Sergeant Rios, "If this is our chance to get rid of her, we're going to get rid of her." (Doc. No. 34-1, depo p. 144, 147–48). Ultimately, Major Crespo and Frank Gargett denied Plaintiff's requests to rescind her resignation. (Doc. No. 46, ¶ 66).

Thereafter, Plaintiff filed this lawsuit and asserted twelve claims against Defendant. Because Plaintiff has dropped her gender-based discrimination and gender-based retaliation claims, as well as her Florida Whistleblower claim, only nine claims remain:[2] (1) race discrimination under the Florida Civil Rights Act ("FCRA"), Title VII, and § 1983 based on Defendant's decision not to allow her to rescind her resignation - Counts I, V, and IX; (2)

---

[2]Plaintiff states in her response brief that she is dropping her gender-based discrimination (adverse employment action and hostile work environment), gender-based retaliation, and Florida Whistleblower claims. (Doc. No. 45). She also explains in her response brief that she is limiting her race-based discrimination and retaliation claims to Defendant's decision not to allow her to rescind her resignation.

retaliation under the FCRA, Title VII, and § 1983 based on Defendant's decision not to allow her to rescind her resignation - Counts III, VII, and X; and (3) racially hostile work environment under the FCRA, Title VII, and § 1983 - Counts IV, VIII, and XI.

### III.  Motion for Summary Judgment

Defendant moves for summary judgment on all of Plaintiff's claims.[3]  Accordingly, the Court will analyze Plaintiff's nine remaining claims.

#### A.  Hostile Work Environment (Counts IV, VIII, and XI)

Plaintiff contends that she was subjected to a racially hostile work environment.  In order to establish her hostile work environment claim, Plaintiff must show: (1) that she belongs to a protected group; (2) that she has been subject to unwelcome harassment; (3) that the harassment was based on her race; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of her employment and create a discriminatorily abusive working environment; and (5) that Defendant is responsible for such environment under either a theory of vicarious or of direct liability.  See Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002).  Upon review of the record, the Court finds that genuine issues of material fact exist that preclude summary judgment on Plaintiff's hostile work environment claims.

#### B.  Retaliation (Counts III, VII, and X)

Plaintiff also contends that Defendant's decision not to allow her to rescind her resignation was done in retaliation for her complaints of discrimination and harassment.  In order to establish a retaliation claim, Plaintiff must show that Defendant's desire to retaliate against

---

[3]Case law dealing with Title VII is applicable to Plaintiff's claims under the FCRA and § 1983.  See Maniccia v. Brown, 171 F.3d 1364, 1368 n.2 (11th Cir. 1999)(Title VII and FCRA); Stallworth v. Shuler, 777 F.2d 1431, 1433 (11th Cir. 1985)(Title VII and § 1983).

her (due to her protected activity—her complaints of race discrimination and harassment) was the but-for cause of Defendant's decision not to allow her to rescind her resignation. See University of Texas Southwestern Medical Center v. Nassar, 133 S. Ct. 2517, 2528, 2534 (2013). However, if Defendant would have made the same decision even if Plaintiff had not made complaints of discrimination and harassment, then her retaliation claim will fail. See id. at 2525.

Defendant contends that Gargett was the ultimate decision-maker regarding the decision not to allow Plaintiff to rescind her resignation. (Doc. No. 23, p. 23). Plaintiff has provided evidence that the Regional Office (presumably Gargett) had stated that if Plaintiff made another request or complaint about race discrimination, Plaintiff would be terminated. (Doc. No. 46, ¶ 59). Additionally, Plaintiff points out that on December 9, 2014, Plaintiff spoke to Frank Gargett in the Regional Office and asked to change her shift and supervisor (Sergeant Lewis was technically Plaintiff supervisor and was the person allegedly harassing her at the time). (Doc. No. 46, ¶ 60). Thereafter, on December 19, 2014, Plaintiff turned in her letter of resignation. Days later, after learning that Sergeant Lewis really had resigned, Plaintiff sought to rescind her resignation. (Doc. No. 46, ¶ 64, 66; Doc. No. 46-12). A reasonable jury could conclude that Gargett's desire to retaliate against Plaintiff for complaining about Lewis' alleged harassment was the but-for cause of his decision not to allow Plaintiff to rescind her resignation.

Defendant contends that the real reason that Plaintiff was not allowed to rescind her resignation was the fact that Plaintiff's resignation was already being processed, and Plaintiff told Major Crespo (who told Gargett on December 30, 2014) that Plaintiff was content with her decision to resign, she just wanted to delay the effective date of her resignation in order to help out her co-workers. (Doc. No. 38-4). Plaintiff disputes that she told Major Crespo that she was

5

content with her decision to resign and only asked to delay the effective date of her resignation. Instead, she contends that at all times she asked to rescind her resignation once she learned that Sergeant Lewis had really resigned. (Doc. No. 46, ¶ 67).

Defendant argues that even if Major Crespo lied to Gargett on December 30, 2014 about Plaintiff being content with her decision to resign, that would not taint Gargett's decision as long as Gargett believed that Crespo was telling the truth when Gargett made his decision on January 12, 2015. However, it is questionable as to how Gargett could continue to believe that Plaintiff was content with her decision to resign when Gargett made his decision on January 12, 2015, given the fact that Plaintiff directly spoke to Gargett on January 5, 2015 and asked to rescind her resignation. (Doc. No. 46, ¶ 66; Doc. No. 38, ¶ 13). Additionally, during the January 5, 2015 meeting, Plaintiff submitted to Gargett a whistleblower complaint alleging a hostile work environment, in which Plaintiff specifically requested that her resignation be rescinded. (Doc. No. 38-5).

A jury could believe that Gargett wanted to get rid of Plaintiff due to her numerous complaints of discrimination and harassment (including her January 5, 2015 whistleblower complaint), and this was the opportunity to do so. Thus, a jury could conclude that Gargett's desire to retaliate against Plaintiff was the but-for cause of his decision not to allow Plaintiff to rescind her resignation. Accordingly, genuine issues of material fact preclude summary judgment on Plaintiff's retaliation claims.

### C. Race Discrimination (Counts I, V, and IX)

Plaintiff also contends that Defendant's decision not to allow her to rescind her resignation was due to race discrimination. In order to establish a prima facie case of race

discrimination, Plaintiff must show: (1) that she is a member of a protected racial class; (2) that she was qualified for the position; (3) that she experienced an adverse employment action; and (4) that she received less favorable treatment than someone outside of her protected class. See Flowers v. Troup County, Ga., School District, 803 F.3d 1327, 1336 (11th Cir. 2015). The parties dispute whether Plaintiff has produced evidence that she received less favorable treatment than someone outside of her protected class.

With regard to this element, Plaintiff contends that two African American employees resigned and were allowed to rescind their resignations. Specifically, Plaintiff points to Officer Tony Jones, who turned in a letter of resignation in order to work elsewhere. (Doc. No. 25-2, depo p. 338). However, when Jones learned that he did not get the other job, he asked Major Crespo if he could rescind his resignation, which was allowed.[4] (Doc. No. 25-2, depo p. 338). Additionally, Plaintiff points to Captain Clarke, who also resigned and was allowed to rescind his resignation the next day. (Doc. No. 25-2, depo p. 338).

Defendant argues that Jones and Clarke are not proper comparators, because their conduct was not nearly identical to Plaintiff's conduct. See Flowers, 803 F.3d at 1340 (stating that a plaintiff must show that a comparator's conduct was nearly identical to the plaintiff's conduct). Defendant argues that neither Jones nor Clarke submitted a written letter of resignation; instead, they discussed resigning with Major Crespo but changed their minds before anything was official. (Doc. No. 27-1). In fact, Defendant points out that in March of 2014, Plaintiff discussed resigning with Major Crespo, but after discussing it with him, she changed her mind and continued working for Defendant. (Doc. No. 27, depo p. 51; Doc. No. 27-1).

---

[4]Sergeant Rios confirms that Jones put in his resignation, and Defendant allowed Jones to rescind it after Defendant had accepted it. (Doc. No. 34-1, depo p. 150).

7

Clearly, there is a disputed issue of fact regarding whether African American employees ever officially resigned, had their resignation accepted by Defendant, and then were allowed to rescind their resignation. Defendant, however, argues that even if Plaintiff can establish a prima facie claim, Defendant has a legitimate, non-discriminatory reason for not allowing Plaintiff to rescind her resignation—Plaintiff's resignation was already being processed, and Plaintiff told Major Crespo (who told Gargett) that Plaintiff was content with her decision to resign. As previously discussed, Plaintiff has pointed to evidence showing that this purported reason may be pretextual. Accordingly, the Court denies Defendant's motion for summary judgment as to Plaintiff's race discrimination claims.

**IV.  Conclusion**

Accordingly, it is ORDERED AND ADJUDGED that:

(1) Defendant's Motion for Summary Judgment (Doc. No. 23) is **GRANTED IN PART AND DENIED IN PART:** The motion is **GRANTED** to the extent of Plaintiff's gender-based discrimination (adverse employment action and hostile work environment), gender-based retaliation, and Florida Whistleblower claims; otherwise, the motion is **DENIED**.

(2) The parties must file all pretrial motions, including all motions in limine, by **February 13, 2017.** Each party may file *one* motion in limine containing all of their arguments in a single document not to exceed 25 pages. Responses thereto must be filed by **February 27, 2017** and may not exceed 20 pages.

(3) The parties' joint pretrial statement must be filed by **February 24, 2017.**

**DONE AND ORDERED** at Tampa, Florida, this 31st day of January, 2017.

Copies to: Counsel of Record

SUSAN C. BUCKLEW
United States District Judge